557 A.2d 368

George Edward SLATER and Minnie R. Slater

v.

PENNSYLVANIA POWER COMPANY, a
Corporation, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 13, 1988.

Filed March 21, 1989.

Reargument Denied May 8, 1989.

510

George M. Weis, Pittsburgh, for appellant.

J. Bradley Kearns, Pittsburgh, for appellees.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Appellant, Pennsylvania Power Company, appeals from a judgment of $108,712.20 entered in favor of appellees, dairy farmers George and Minnie Slater. The farmer and his wife brought a trespass action against the power company on June 2, 1983 for economic injuries suffered in 1981 and

the first part of 1982. The jury awarded damages to appellees in the amount of $81,374.41 and delay damages of $27,340.79 were added.

The events leading up to the suit began early in 1981 when appellees noticed a decline in the milk production of their cows, health problems occurring in most of the cows and unusual behavior by them such as reluctance to enter the barn, not going to their stalls and kicking off the milking equipment. Appellees tried new feeding programs and veterinary treatment but to no avail. During mid–1981, however, appellees learned that stray electricity could be the cause of the problems they were experiencing. They called an electrician who tested areas in and around the barn with a voltmeter and obtained positive voltage readings. Appellees contacted appellant, providers of electricity to the area, who sent an employee to investigate. The employee also discovered the stray electricity, but instead suggested it was from appellees' electrical system and recommended changes be implemented at appellees' expense. The changes were made but the problems persisted so appellant's employee returned and recommended additional changes which likewise produced no improvement in the condition of the cows.

In January of 1982, appellees' electrician disconnected the ground wire which ran down appellant's transformer pole and the stray electricity disappeared. This wire had to be reconnected, however, as it was the property of appellant. At appellees' request, appellant isolated its ground wire from the neutral wire on appellees' farm in February, 1982, and since that time, appellees have experienced no further problems with their cows and their dairy production has returned to normal.

Appellant raises the following issues: 1) whether it is entitled to judgment n.o.v.; 2) whether a new trial should be granted due to a) the court's erroneous jury instruction, b) proof of damages being inadequate and/or c) error in allow-

ing appellees' point for charge No. 5; and 3) whether delay damages should be removed from the verdict.

■ In reviewing the denial of a judgment n.o.v., our scope of review is very narrow. "Viewing the evidence in a light most favorable to the verdict winner and granting that party the benefit of all reasonable inferences, we must only determine whether the evidence was sufficient to sustain the verdict." *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 24, 521 A.2d 451, 454 (1987). More succinctly, "[j]udgment n.o.v. should be entered when the facts are such that no two reasonable persons could disagree that the verdict was improper." *Carney v. Otis Elevator Co.,* 370 Pa.Super. 394, 398, 536 A.2d 804, 805 (1988).

Appellant argues stray electricity is an inherent part of power distribution and problems arise only when the amount of stray electricity is too great. Due to the inordinate amount of problems appellees experienced with their herd, appellant apparently concedes the amount of stray electricity on the farm was too great. It claims however appellees had to prove appellant's negligence caused the excessive amount of stray electricity. The argument of appellees is appellant not only was negligent in supplying the power but also for its failure to immediately reduce or eliminate the stray electricity even though it had sufficient evidence and experience to pinpoint the problem and correct it. Because of appellant's negligence, appellees sustained substantial property and income loss.

The jury obviously agreed with appellees and found appellant was negligent. We believe this was a reasonable result from the evidence and appellant has failed to meet the standard necessary for judgment n.o.v.

■ Appellant next claims the trial court erred in instructing the jury on the standard of care required of appellant. The judge instructed the jury as follows:

Anyone who provides or supplies or uses an inherently dangerous instrumentality such as the supplier of high-

voltage electric current is required by law to use the highest degree of care practicable to avoid injury to everyone who may be lawfully in the area of such activity.

So in this particular case the standard of care which you will apply to the situation will be the standard which we refer to as being the highest degree of care practicable to avoid injury to anyone who may be lawfully in the area of such activity.

(N.T. 10/14/86, p. 772.)

The trial court instructed the jury on the standard of care based upon this Court's decision in *Kintner v. Claverack Rural Electric Co-operative, Inc.*, 329 Pa.Super. 417, 478 A.2d 858 (1984). *Kintner* involved a dairy farmer's loss of 14 cows after power lines fell during a storm and electrocuted them. There we said a supplier of electricity was required to exercise the highest degree of care practicable.

The power company argues the *Kintner* case was wrongly decided because prior case law only attributed the highest standard of care in cases in which *humans* were injured or killed. This argument is unpersuasive, however, as *Kintner* and *Schriner v. Pennsylvania Power & Light Co.*, 348 Pa.Super. 177, 501 A.2d 1128 (1985), which cites *Kintner* with approval, are the law in Pennsylvania despite appellant's belief the highest standard of care is required only when injury to humans is involved. While many of the cases cited by the power company involved injury to persons, the power company does not cite a case which would exclude the higher standard of care in property damage cases. There is no reason advanced to disavow the holding in *Kintner* that the higher standard of care is applicable to property damage.

■ Appellant's third issue is that appellees failed to present adequate proof of damages since most of the evidence was presented by Mr. Slater himself. The trial court

ruled there was adequate evidence of damages, and damages need not be proven with mathematical precision. Our standard of review is very narrow on these issues.

The determination of damages lies initially within the discretion of the jury, which weighs the evidence and assesses the credibility of the witnesses. The decision to grant or to deny a new trial on the ground of excessiveness lies, in turn, within the discretion of the trial court. We will not disturb the decision absent a clear abuse of that discretion. (Citations omitted.)

*Glomb v. Glomb*, 366 Pa.Super. 206, 216, 530 A.2d 1362, 1368 (1987).

Appellee George Slater provided evidence of lost milk production income, lost butterfat production income and loss of cows, including those that were slaughtered, thereby mitigating the damages. The loss of production was established by showing the difference in figures between the troubled and untroubled years. He also supplied the jury with information about the operation of his farm allowing them to understand the nature and extent of his losses. Although appellant cites *Kintner, supra,* as the standard for proving damages in this case, the loss to the farmer in *Kintner* was easier to ascertain and quantify since the cows were electrocuted and losses could be readily determined. As testimony by Mr. Slater showed, the stray electricity problem was not something easily measured in terms of damages as the effect on his cows was insidious and prolonged, therefore, the immediate effect could not be ascertained. His means of proving his losses was in keeping with the conditions and circumstances presented by appellant's negligence as it affected the farming operation.

■ As correctly noted by appellant, Mr. Slater had the burden of proving his damages by a preponderance of the evidence; however, he only needed to provide the jury a reasonable amount of information to enable them to estimate damages without engaging in speculation. *Bolus v.*

*United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987), allocatur denied, 518 Pa. 627, 541 A.2d 1138 (1988). We find appellees provided sufficient information to the jury and the verdict was not one of speculation. The evidence presented by appellees established they did everything within reason to mitigate their losses and to find a solution to the problem, complying with recommendations from the appellant, without success; replacement cows would not have solved the problem as they too would have suffered the same harm causing increase in the loss rather than mitigating the loss. Moreover, we note appellant could have presented contradictory evidence as to damages through its own witness or by cross-examination but failed to do so. Appellant's request for a new trial on this ground is denied.

■ Finally, appellant argues a new trial should be granted based on the contention the trial court erred in charging the jury on the National Safety Code, appellees' point for charge No. 5. Appellant has waived this issue for failure to raise it when given the opportunity by the court immediately after the charge. *Eck v. Powermatic Houdaille,* 364 Pa.Super. 178, 527 A.2d 1012 (1987).

■ Appellant's final issue is Rule 238 delay damages should not have been awarded, given the trial court's finding that neither party had caused any delay. The trial court interpreted *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), to stand for the proposition that Rule 238 damages should be awarded except for those periods of delay caused by plaintiffs/appellees. Appellees claim the delay damages should be affirmed because appellant failed to make a reasonable settlement offer which, in effect, caused a delay in the resolution of the case. Appellant offered appellees $25,000 in December, 1985, while the verdict rendered in October, 1986 was for $81,374.41.

On November 7, 1988, the Pennsylvania Supreme Court rescinded the provisions of Pa.R.C.P. 238 as it existed at the time the verdict and judgment were entered in this case. In its place, the Court promulgated a new Rule 238, effective immediately, and applicable to all "actions pending on or after the effective date of this rule in which damages for delay have not been determined." Pa.R.C.P. 238(f). Although the delay damages had been determined in the *trial court* prior to the effective date of the new rule, our Court, in *Ceresini v. Valley View Trailer Park Ephrata, Inc.*, 380 Pa.Super. 416, 552 A.2d 258 (1988), found "the Rule applies to all actions pending at the trial level, or on appeal, in which the issue of delay damages has been preserved and not finally determined." *Id.*, 380 Pa.Superior Ct. at 418–419, 552 A.2d at 259.

While this holding is questionable in light of the explanatory comments to subdivision (f) of Rule 238 [1] (*see Ceresini*, dissenting opinion, Popovich, J.), we are bound by *Ceresini*, which treats this case as a *"pending case* on or after the effective date" of the new rule. We, therefore, remand this case for a determination of delay damages in accordance with the new Rule 238 and in accordance with *Ceresini*.

Judgment on the verdict affirmed, exclusive of delay damages. Case remanded for proceedings on delay damages as set forth in this Opinion and in accordance with Pa.R.C.P. 238, effective November 7, 1988.

Jurisdiction relinquished.

CAVANAUGH, J., concurs in the result.

---

1. The purpose of this provision is to indicate that the rule applies to pending as well as future actions but not to pending actions in which the damages for delay have been determined under the provisions and procedures of the *Craig* [512 Pa. 60, 515 A.2d 1350 (1986) ] case. Once damages for delay have been determined under *Craig*, those proceedings are final and are not to be reopened under this rule.
Explanatory Comment to Pa.R.C.P. 238(f).